[Cite as *State v. Young*, 2018-Ohio-4920.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### LOGAN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  8-18-11

      v.

SHANDRA N. YOUNG,                       O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR17-07-0218

**Judgment Affirmed**

Date of Decision:   December 10, 2018

APPEARANCES:

    *Eric J. Allen* **for Appellant**

    *Sarah J. Warren* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, Shandra N. Young, appeals the March 7, 2018 judgment entry journalizing her conviction after pleading guilty to one count of reckless homicide and one count of aggravated possession of drugs, and sentencing her to an aggregate prison term of forty-eight months. On appeal Young claims that she was denied due process when the trial court accepted her guilty plea without an adequate factual basis presented by the prosecution in the record, and that the trial court erred in ordering her to serve consecutive prison terms for the convictions.

*Procedural History*

{¶2} On July 11, 2017, the Logan County Grand Jury returned a four count indictment alleging Young committed the following offenses: Count One, Reckless Homicide, in violation R.C. 2903.041(A), a felony of the third degree; Count Two, Abuse of a Corpse, in violation of R.C. 2927.01(A), (C), a misdemeanor of the second degree; Count Three, Aggravated Possession of Drugs, in violation of R.C. 2925.11(A), (C)(1)(a), a felony of the fifth degree; and Count Four, Possession of Heroin, in violation of R.C. 2925.11(A), (C)(6)(a), a felony of the fifth degree.

{¶3} According to the Bill of Particulars, Counts One and Two, as charged in the indictment, stemmed from allegations that on February 16, 2017, Young and her husband, Jeffrey, were present when their friend, Thomas Cotterman, overdosed and died. Specifically, Young's husband arranged to meet his drug dealer in Dayton

to purchase drugs. Cotterman permitted Young and her husband to use his vehicle and traveled with them. On the return trip to Logan County, the trio broke up the drugs and each consumed at least one line in the vehicle. Upon returning to the Indian Lake area, Young noticed that Cotterman, who was seated in the backseat, was having respiratory issues and problems breathing. When Cotterman started to gasp and appeared to stop breathing, Young attempted to perform CPR on Cotterman. Young claimed she repeatedly asked her husband to take Cotterman to the hospital, but he refused, stating that Cotterman would eventually come out of the overdose. Young splashed some water on Cotterman and he appeared to be breathing better. Cotterman was then left in the vehicle overnight.

{¶4} The next morning at 6:00 a.m., Young drove her husband to work in the vehicle and heard Cotterman make gurgling sounds as he attempted to breathe. Young's husband still refused to take Cotterman to the hospital. Young went home, showered, and checked on Cotterman in the vehicle. He was barely breathing. At approximately 8:30-9:00 a.m., Young picked up her husband from work to take Cotterman to the hospital. However, Young's husband decided to drive Cotterman to Lima, because he thought the hospital there was better than the local one. Young and her husband then stopped to pick up Jeffery's grandmother, who lived in the area, because she had a valid driver's license. They then drove Cotterman to Lima. Young was dropped off at a fast food restaurant across the street from the hospital

in Lima. Young's husband and his grandmother then took Cotterman to the Emergency Room, where Cotterman was determined to be flatlining and had a temperature of 77.9 degrees upon arrival. Cotterman died shortly thereafter of what was later determined to be carfentanil toxicity.

{¶5} Count Three, as charged in the indictment, pertained to allegations that on March 4, 2017, Young was found in possession of fentanyl when law enforcement conducted a traffic stop of Young's husband who was driving under suspension. Young later confessed to law enforcement that she and her husband purchased a half gram of drugs for $30.00. The substance found on Young was determined to be fentanyl.

{¶6} Count Four listed in the indictment contained allegations that on May 3, 2017, while Young was incarcerated at the local jail, another person conveyed heroin on her person into the jail and Young consumed the heroin.

{¶7} Young was subsequently arraigned and entered a plea of not guilty and was given a personal recognizance bond.

{¶8} On August 14, 2017, the trial court revoked Young's bond and issued a capias warrant after granting the prosecution's motion to revoke Young's bond because she was found to be in possession of PCP and cocaine, which was a violation of the conditions of her bond. The trial court permitted a surety bond to

be issued for Young's release premised upon her compliance with certain conditions.

{¶9} On October 4, 2017, the trial court again revoked Young's bond and issued a capias warrant after granting the prosecution's motion to revoke Young's bond because she failed to report to the Adult Parole Authority office for a daily drug screen, which was a condition of her bond. Young also failed to appear for a final pre-trial hearing, causing the date for a jury trial to be continued.

{¶10} On January 22, 2018, Young appeared in court for a change of plea hearing, where pursuant to a negotiated plea agreement Young withdrew her previously tendered not guilty pleas and entered pleas of guilty to Count One, Reckless Homicide, and Count Three, Aggravated Possession of Drugs, as charged in the indictment. In exchange for her entering her guilty pleas, the prosecution agreed to dismiss Count Two, Abuse of a Corpse, and Count Four, Possession of Heroin. The trial court accepted Young's guilty pleas and ordered a pre-sentence investigation report to be completed.

{¶11} On March 7, 2018, the trial court sentenced Young to thirty-six months in prison for her third degree felony Reckless Homicide conviction, and twelve months in prison for her fifth degree felony Aggravated Possession of Drugs conviction. The trial court found the relevant factors in R.C. 2929.14(C)(4) to be

applicable and ordered the prison terms to run consecutive for a total of forty-eight months.

{¶12} Young now appeals from the trial court's judgment entry of conviction and sentence, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**A FELONY CRIMINAL CONVICTION, WHETHER FROM PLEA OR TRIAL, WHOLLY DEVOID OF ANY FACTUAL SUPPORT IN THE RECORD IS A DENIAL OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND/OR ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. 2**

**THE RECORD IN THIS MATTER DOES NOT SUPPORT THE IMPOSITION OF CONSECUTIVE SENTENCES PURSUANT TO STATE LAW R.C. 2929.14.**

*First Assignment of Error*

{¶13} In her first assignment of error, Young argues that the trial court erred when it accepted her guilty plea and found her guilty, absent an explanation of the circumstances constituting the reckless homicide offense. Young claims that without an explanation of circumstances the court lacked a factual record sufficient to support the trial court's finding of guilty. In her brief, Young relies on cases construing R.C. 2937.07, which provides that "[i]f the offense is a *misdemeanor* and accused pleads guilty to the offense, the court or magistrate shall receive and enter the plea unless the court or magistrate believes that it was made through fraud,

collusion, or mistake." (Emphasis added). That section creates a mechanism to avoid such defects by providing that "[u]pon receiving a plea of guilty, the court or magistrate shall call for an explanation of the circumstances of the offense from the affiant or complainant or the affiant or complainant's representatives," and that "[a]fter hearing the explanation of circumstances, together with any statement of the accused," the court or magistrate shall impose a sentence or continue the case for that purpose. R.C. 2937.07

**{¶14}** By its terms, R.C. 2937.07 has no application to the two felony offenses to which Young entered guilty pleas. *See State v. Guy*, 2d Dist. Montgomery No. 22444, 2008-Ohio-3483, ¶ 9. Therefore, R.C. 2937.07 confers no substantive right that would prevent the trial court from finding Young guilty absent an explanation of the circumstances constituting her felony offenses. Rather, pleas of guilty or no contest to charges alleging felony offenses are instead governed by Crim.R. 11(C).

**{¶15}** Although, Young does not assign error to the trial court's handling of her guilty pleas pursuant to Crim.R. 11(C), we nevertheless note that the transcript of the proceedings demonstrates that the trial court complied with every requirement dictated by Crim.R. 11 in its plea colloquy with Young. Specifically, Young acknowledged her understanding of the nature of the charges listed in the indictment and that by pleading guilty she was making a complete admission of guilt to the

-7-

allegations contained in the indictment. Accordingly, we find that Young's arguments regarding the inadequacy of the factual basis in the record to be without merit and overrule the first assignment of error.

*Second Assignment of Error*

{¶16} In her second assignment of error, Young claims the trial court's imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4) was not supported by the record and contends that her sentence is contrary to law.

{¶17} An appellate court generally reviews felony sentences under the standard of review set forth in R.C. 2953.08(G)(2), which states:

> **The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.**
>
> **The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. 'The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:**
>
> **(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;**
>
> **(b) That the sentence is otherwise contrary to law.**

{¶18} Appellate courts "may vacate or modify any sentence that is not clearly and convincingly contrary to law" only when the appellate court clearly and

convincingly finds that the record does not support the sentence. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 23.

**{¶19}** "In order to impose consecutive sentences, a trial court is required under R.C. 2929.14(C)(4) to make certain findings for the record and to incorporate these findings into the judgment entry." *State v. Taflinger*, 3d Dist. Logan No. 8-17-20, 2018-Ohio-456, ¶ 10. Specifically, R.C. 2929.14(C)(4) states:

> **If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**
>
> **(a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**
>
> **(b)   At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**
>
> **(c)   The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

R.C. 2929.14(C)(4).

**{¶20}** Here, the record reflects that the trial court specifically found that:

**[c]onsecutive sentences are necessary to protect the public from future crime and/or punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

(Doc. No. 55 at 2).

**{¶21}** Appellant does not claim the trial court failed to make the proper findings under R.C. 2929.14(C)(4); rather, she maintains the findings were not supported by the record. Specifically, Young claims the trial court did not give due consideration to certain mitigating factors such as the fact that she is a victim of domestic violence and that "she has long suffered various forms of abuse from her controlling husband;" that she has a "long-standing drug addiction;" and that she "has developmental and cognitive delays that allow her to be easily influenced, especially after becoming intoxicated with illicit substances." (Appt. Br. at 5). Young also points to her expression of remorse at the sentencing hearing and her family support to help her get sober and to divorce her husband.

**{¶22}** Contrary to Young's contentions on appeal, the record reflects that the trial court did consider these mitigating factors, but found that they did not outweigh certain aggravating factors revealed in Young's pre-sentencing investigation report.

-10-

In particular, the trial court noted that Young had a history of substance abuse and drug-related offenses, and had been given community control sanctions "repeatedly" and that "clear * * * attempts to intervene [with her substance abuse] have not worked" for her. (Doc. No. 78 at 14). The trial court further noted in its dialogue with Young at sentencing that her criminal conduct had become more serious over time, "now, ultimately leading to the death of another. You have to be held accountable for this offense." (Id.)

{¶23} The trial court also observed that Young was on probation for a prior offense when the underlying offenses occurred. The trial court stated to Young, "[y]ou have a significant history of criminal convictions. You have not responded well to * * * probation. [The] victim in this case suffered, obviously, serious physical harm, that being death. He was a friend of yours. You literally watched a friend die." (Id). The trial court further found the record demonstrated that Young was not amenable to community control.

{¶24} Based on the record before us, Young failed to clearly and convincingly demonstrate that the trial court erred by ordering her to serve the prison sentences consecutively. The trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings in its sentencing entry. Moreover, as demonstrated above, the trial court's findings with regard to imposing consecutive sentences were supported by

the record. Therefore, the trial court did not err in ordering consecutive sentences and we overrule the second assignment of error.

{¶25} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**